IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CARL EUGENE HAYES,<br><br>Defendant. | Case No. CR14-0074<br><br>ORDER FOR PRETRIAL DETENTION |

On the 25th day of July, 2014, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Charles J. Williams. The Defendant appeared personally and was represented by his attorney, Cory Goldensoph.

## I. RELEVANT FACTS AND PROCEEDINGS

On July 22, 2014, Defendant Carl Eugene Hayes was charged by Indictment (docket number 3) with conspiracy to manufacture methamphetamine (Count 1) and attempting and aiding and abetting the attempt to manufacture methamphetamine (Count 2). At the arraignment on July 23, 2014, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on September 22, 2014.

Cedar Rapids Police Officer Sarah Lacina testified regarding the circumstances underlying the instant charges.[1] During the early morning hours of May 15, 2014, police officers and firefighters responded to two fires at an apartment occupied by Christopher Falls (a co-defendant) and his girlfriend, Danielle Coleman. The first fire, at approximately 2:30 a.m., was in the kitchen and appeared to be caused by cooking food.

---

[1] Officer Lacina is currently assigned to the DEA Task Force.

The second fire, at approximately 6:00 a.m., was also in the kitchen. When officials were called back for the second fire, however, they found a melted plastic bottle in the sink, together with Coleman fuel, lithium batteries, and "sludge" sprayed over the area. Lacina testified that the scene was consistent with a fire caused by the attempt to manufacture methamphetamine using the "one-pot method."

The first officer on the scene at the time of the first fire reported seeing three persons: Falls, Coleman, and an unidentified third person. The description given by the officer matches Defendant. Following the second fire, a female neighbor described a person at the scene who resembled Santa Claus. That description also matches Defendant. A male neighbor subsequently identified Defendant from a photo line-up. One of the two witnesses told authorities that they saw the person leave the scene in a maroon car.

Danielle Coleman testified before the grand jury that on the previous evening, Falls and Defendant visited her at work. After she got off work, the three of them went to the Prime Time Sports Bar. (That testimony was verified by investigators viewing video at the bar.) According to Coleman, the three of them then went back to the apartment, where Falls accidentally started a fire while cooking food. Coleman testified that she then went to bed. She was awakened, however, when she heard Defendant say: "Chris, put it out." Coleman then realized that there was a fire and she asked for Defendant's help in evacuating her cats. Coleman testified that she saw Defendant leave the scene in a maroon car.

Co-Defendant Christopher Falls admitted to officers that the second fire was related to a failed attempt to manufacture methamphetamine using the one-pot method. Falls denied any involvement in the manufacture, but admitted that he had gone to a Target store the prior evening, accompanied by Defendant, and purchased pseudoephedrine. (A video at the store shows Falls — but not Defendant — entering the store.)

When Defendant was later interviewed by investigators, he initially denied being in Cedar Rapids for the past two months, and denied knowing Falls and Coleman. Defendant admitted, however, that he drove a maroon car. Defendant later called the officers and admitted being in Cedar Rapids and at the apartment when the first fire occurred. Investigators then interviewed Defendant a second time. Defendant admitted to the long-time use of methamphetamine, but denied any involvement in the second fire.

According to Officer Lacina, authorities have a recording of Defendant in which he admits that methamphetamine was being cooked at the apartment while he was there. Defendant allegedly said that the original bottle cracked and he went to the store to purchase another bottle, so the manufacturing process could continue. Defendant also mentioned saving Coleman's cats.

Officer Lacina testified that during the 12 months prior to the fire, Defendant had purchased pseudoephedrine on 23 occasions, and was "blocked" from purchasing pseudoephedrine on six other occasions. His last purchase was eight days before the fire. Significant to the issue of pretrial detention, Defendant also made four purchases of pseudoephedrine after the fire.

According to the pretrial services report, Defendant is 63 years old. He was born in Manchester, Iowa, and has lived in this area all of his life, with the exception of time spent in the United States Army between 1969 and 1974. Defendant's mother and two brothers also live in the area. Defendant has been married twice, with both marriages ending in divorce. No children were born to the marriages.

According to Defendant, he retired in 2008 after working 35 years as an over-the-road truck driver. He currently receives social security benefits and a small amount of income doing odd jobs for his landlord. Defendant is in good health, with no history of mental or emotional health issues. Defendant denied the consumption of alcohol and told the pretrial services officer that he has not smoked marijuana in over 20 years. Defendant

3

admitted, however, that he has used methamphetamine "once or twice" per month since age 22. He is currently participating in drug treatment at the Substance Abuse Services Center in Manchester, Iowa.

Defendant has only a modest criminal record. In 2008, he was convicted of harassment in the third degree. In October 2013, officers responded to the site of an illegal burn, and found evidence consistent with the manufacture of methamphetamine. As a result of those events, Defendant was charged with conspiracy to manufacture methamphetamine in February 2014, and received a deferred judgment on that charge on July 8, 2014. On the same date, Defendant received a deferred judgment on an unrelated charge of theft in the first degree.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

4

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on

probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to manufacture methamphetamine and attempting and aiding and abetting the attempt to manufacture methamphetamine. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

There is a rebuttable presumption that Defendant should be detained pending trial. Defendant is charged with two serious drug offenses, arising from a fire which occurred in an apartment complex following a failed attempt to manufacture methamphetamine. The

weight of the evidence against Defendant is strong. While Defendant has long-time ties to the community and is an unlikely risk of flight, I believe his release poses a danger to the community. Defendant has used methamphetamine all of his adult life. In October 2013, Defendant conspired to manufacture methamphetamine. He was charged in state court in February 2014, and was on pretrial release when these events occurred in May 2014. Accordingly, being on pretrial release does not appear to be a particular deterrent to Defendant engaging in these dangerous activities. Perhaps most telling, however, is that Defendant has continued to purchase pseudoephedrine in unusual quantities even *after* the fire which gives rise to the instant charges. The Court has no confidence that Defendant would comply with any terms or conditions which I may impose for his release.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is

confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (July 23, 2014) to the filing of this Ruling (July 25, 2014) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 25th day of July, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA